to 23-909CV, Ascari v. Pharmerica Corporation et al. May it please the court, Kevin Mulrey from Farrell Fritz for the appellant, relator Kevin Ascari. In this action, the relator alleges that defendants violated the False Claims Act by submitting claims to Medicare and Medicaid in states where the company Onco360 Specialty was not licensed to practice pharmacy or dispense prescription drugs, claims that were improperly using the wrong National Provider Identifier number called the NPI, and claims that were overbilled or upcoded. The district court should have not dismissed the first amended complaint and should have permitted the filing of the second amended complaint. Can I ask you a question about the upcoding allegations? Because it wasn't clear to me. The way I read your allegations, it was that, forgive me, I'm probably going to get some of the terminology wrong, but that Pharmerica primarily had contracts for long-term care patients, right? Yes. And that after the acquisition of Onco360, it did not seek any retail contracts. That's correct. And it seems to me that then your allegation that they were upcoding was based on an inference from that, that therefore, by virtue of the facts I have just stated and that you had recounted, that was the factual predicate for the inference that they were upcoding and that they were charging the Onco360-filled prescriptions as long-term care, which you allege are billed at a higher rate. Have I accurately stated your allegations, or is there something additional? That is correct, with one additional part that comes in with respect to the National Provider Identifier fraud, because if you recall under the licensing and NPI claims, there were two steps. One was the workaround. One was OMPD. And under OMPD, Onco360 specialty is still billing Medicare and Medicaid. They're billing in those states where Onco360 is not licensed. But under that format, they're using the NPI of Pharmerica. Right. No, I got that. So they're holding themselves out as Pharmerica. I think that's perhaps too loose a rephrasing, but just an approximation of what you're arguing. But again, the notion that there was upcoding, I understand, comes from inference that you said that Pharmerica primarily has long-term care contracts or long-term care patient contracts. My question is this. You used the word, and it seems to be put in there carefully, primarily, which suggests, I think, that Pharmerica does not exclusively have long-term care patient contracts. It also has retail. Because you say after the acquisition, they did not seek retail, which, again, by negative implication, seems to suggest that before the acquisition, they did seek and presumably obtain retail patient contracts. So my question is this. If your allegations are that Pharmerica had both long-term and retail patients, why is it that we should infer, particularly when we have Rule 9 standards for fleet and fraud, why is it that we should infer that the billing went only to the long-term patient contracts and not the retail ones, if by definition they have both? And that's why I don't see the inference that says by using MPI for Pharmerica, by holding themselves out, so to speak, as Pharmerica, they were necessarily billing at the higher of the two rates that Pharmerica could use. Explain that for me. Well, Your Honor, we believe that at the pleading stage, that inference can be drawn. And it's a question of volume. What we allege is that Pharmerica is a national long-term pharmacy company. But I think you just said primarily. No, that's true. It primarily means other than 51% or 50% plus of peppercorn. So why is it that we should say that? Because I think is that your claim, that because you used the word that they primarily have long-term care patient contracts, we should infer, including under Rule 9, that all the Onco 360s, or maybe you would say a substantial portion of them, must have been billed at the higher rate. When you know, by your allegations, that just billing as Pharmerica does not necessarily imply billing at one rate or the other. So help me with that, Lee. Your Honor, that's the allegation. And the allegations with respect to the upcoding are less specific than the allegations with respect to the licensing and the MPI fraud. So we believe there is sufficient allegations in the second amended complaint with respect to the overbilling. But we believe that. But just help me. What allegations? Is there anything besides what I said? That's the primary allegation that we've alleged. All right. To go to the other fraud, Your Honor, the licensing and the workaround. Defendants concede or do not dispute that Onco 360 was not licensed in those states, that it performed the critical pharmacy functions, and that the prescriptions were sent into states where they were not licensed. The states- They were not licensed to prepare the prescription, but they could dispense a prescription, right? Onco 360- They are licensed pharmacies, they just weren't licensed to prepare the specialty pharmaceuticals, is that- Yes, but Onco 360- They didn't have a pharmacist in charge who could prepare the- That's correct, and because of that- But they were licensed pharmacies. Right. So their argument is, well, it was prepared by a pharmacy that was licensed in a state in which it could prepare the prescription, and then it transferred into a pharmacy that could dispense a prescription. Or was it the other way around? No, no, it's the other way around, I believe, Your Honor. It was that Onco 360 specialty is not licensed. Onco 360 was performing all the critical functions of pharmacy, preparing it, bottling it, labeling it. Then they sent it to a Pharmerica pharmacy, which was licensed in those states. But the Pharmerica pharmacy, which was licensed, was really only a mail drop. Yeah, that was for delivery. It was essentially the delivery. The delivery. Now, my concern is that I don't understand. The word dispense is not as apparent as I thought it was when I first got into this case. Dispensing may or may not involve delivery in certain cases. And also, it also, for instance, in North Carolina, defines dispense as preparing and packaging a prescription drug or device in a container and labeling the container with information required by state and federal law. And it includes both filling or refilling drug containers and providing quantities of unit dose prescription drugs for subsequent administration. It doesn't deal with delivery. The state definition of dispense. What we argue is that some states include delivery as part of their definition of regulation. I'm sorry, of dispensing. But dispensing is the heart of the dispensing, the heart of what a pharmacy does, is actually preparing the medication that's going to the ultimate customer. And that was done here. There's this debate. Could it be that a state regulator might say, well, this is an evasion of our licensing regulations because you can't prepare it in a different state than deliver it within our state because you're avoiding our licensing regulations that apply to preparations within the state. You could also imagine a state taking the position that, well, as long as you're not preparing it within the state, you're not violating our licensing laws. And it's for the other state where it's prepared to make a judgment about whether that activity is okay. So I could kind of see a regulator taking either position. Do you have anything that suggests that there is a regulator in one of the states where you are filing a claim or alleging that there was illegality where the regulator has taken the position that this violates their regulations? Yes. The concept of sublicing is what the defendants have focused on. It's not anything they argued before the district court in the initial motion. It was something that came up. Judge Daniels suggested it in his decision. There's absolutely no support for the concept that one pharmacy can simply sublicense to another pharmacy. Well, but is that, when you say there's no support, are you suggesting that there's sort of an absence of authority one way or the other? No, because what do states do when they want to- So is there authority then, just to be clear, there's authority in states that you're talking about that says thou shalt not sublicense? It says that if you want to sublicense in certain manners, you have to do it in a specific way. And that's what's in the second amended complaint with respect to central fill regulations in states. Has any state told Pharmaerica that they can't do this? Not that we are aware of. So, and you, you know, provided notice to each of the states as part of filing this complaint, right? Well, Your Honor, the court cannot ascribe any reasoning to the declination decision. Just because they didn't intervene in the action doesn't mean that they approve of it. I'm just saying, you know, there is reason to believe they had notice that this is going on. It's a very large pharmacy and so on. It's operated in a lot of states. I'm just asking, is there any state that has said you cannot have this partnership between the out-of-state location and the in-state location that violates our regulations? Or any time the Medicare or Federal Reimbursement Service has said these are not reimbursable prescriptions because you're relying on this arrangement? Well, certainly the government has brought cases based on a failure of licensing. But beyond the licensing, I also- This scenario, right? I don't- A licensed pharmacy preparing and dispensing prescriptions would more clearly violate the applicable laws. No. So I'm asking about this thing, the workaround. Has any state said this is not allowed under our regulations? No, we have not seen a situation where someone tried to do this and was told by the state. Does it matter? Does it matter what- Well, no, it doesn't, Judge. As long as it's material- State-regulated. As long as it's material to the decision, and I assume- Yeah, but doesn't that tell us whether it's material to the decision? If it's going on and it's pretty widespread and states do not seem to be taking action against it and the federal government and other health care agencies are reimbursing the prescriptions, doesn't it indicate that actually they don't consider it material? So if we have an interpretation of law that could go either way, and the question is, does this really make a difference as to whether the prescriptions were reimbursable under the state's interpretations of their own laws? If there's a complete absence of evidence of any state saying that it is, doesn't that suggest that you haven't shown that there actually was a false claim for payment presented to any state or the federal government? Well, the start of your question was that this is pretty widespread and we're not seeing any enforcement. There's no evidence that this is pretty widespread. We have seen no one who's tried to do something like this, and it's also another important point not to miss is the NPI fraud. Because just putting the licensing aside for a minute, what you have here is Onco360 is billing Medicare, receiving the Medicaid money under both the workaround and under OMPD, and it's not licensed in those states. In one of those situations, it's using its own NPI, where Pharmerica argues that Pharmerica's the dispensing pharmacy. How can that be? In the next iteration, they actually program the Onco360 system so that for those billings, they will bill using the NPI of another pharmacy, which is identity fraud, which is fraud as defined- Let me ask you this, are there two dispensers in these cases? In effect, in other words, it's not all one or all the other, I think is your point. Well, under the- Onco360 can be dispensing and Pharmacaria, America, can also be dispensing. Is that accurate? Under the definitions here, actions that both pharmacies took are in those definitions. So there is a question here, can you have two dispensing pharmacies? That's not typical. It's not something that you see. But I think the important question for the Pharmerica defendants, which we presented in our opening brief and was never answered, it's the question, if Pharmerica is the dispensing pharmacy under the workaround, why is Onco360 billing, why is Onco360 using- Maybe it's a matter of convenience. I mean, the question is, we don't necessarily care about the motivation or why. It could have nefarious reasons. It could have fantastic, sensible reasons. The question is, is it a false claim, right? Right. Have they lied to get the government to pay them money, right? I mean, in lay terms. Let me ask you this, because this was not entirely clear to me. The very premise of your argument with respect to the two schemes is that a violation of state pharmacy licensing laws gives rise to a false claims act. Yes. Right? Where is the false certification to the government? Just at its root, right? With fraud, you need to lie to somebody, implicitly or explicitly. What is the lie? And where's the regulation or where's the certification, the form that you send to the government where you say I'm complying with state pharmacy laws that you have now proved is a lie? Where in your complaint, your proposed second amendment complaint, do you point to the lie? Well, Your Honor, it's an implied false certification. Right. So, again, if you say something like they filed a certification on January 31st, and it's implied that they were telling the government, oh, and I'm complying with the pharmacy laws, where? When? When? Well, in the claim, they certify that they have complied with the Medicare and Medicaid regulations. But they are not licensed. And that's what happened in Escobar. Has Medicare and Medicaid denied reimbursement because the dispensing pharmacy failed to comply with state pharmacy regulations? That would let us know that it's material to their reimbursement decision, right? We have a record of that, that the federal government, the Medicaid or Medicare program ever said, well, you didn't use the right MPC number. And so, therefore, we're deciding that these prescriptions are not eligible for reimbursement. Yes, 42 CFR 424.506. A Medicare contractor will reject a claim from a provider or a supplier if the required NPI is not reported. We've also cited cases there at our brief at page 40 that the failure to use the proper NPI is a false certification. But the other question would be whether they've ever claimed money back, having made the payments. Having made the payments with a withholding or a concealment of relevant and material facts. Have they ever claimed, okay, after you file your complaint, have they ever claimed, well, we need reimbursement because we wouldn't have dispensed, we wouldn't have paid you, had we known the truth? Yes, with respect to NPI, certainly. With respect to- No, I'm talking about licensing. Right, and there are two bases for the claim. NPI fraud is identified in the Medicare Fraud Handbook using, shielding the identity of the person who is actually providing the service because they are not licensed or they're not permitted to perform that service. With respect to the licensing issue- Go ahead, you answer this and then answer my other question about any claim for a refund. With claims for a refund, no, I don't have specific claims for a refund, but certainly denials of claims based on improper NPI or a failure to be properly licensed. Well, if what was concealed that would have caused them to deny it is concealed, then they didn't deny it, they paid it. They paid it on false pretense, if you're saying. Yes, yes. The fact that they paid it doesn't mean that they knew about this and decided to pay it anyway, which goes to the answer, I think, the question- I was looking for some evidence that if they had known about it, they would have refused to pay for it. And you cited a regulation. I guess I was curious if there are any instances where there actually was a denial of payment once the government was informed about the circumstances. And you don't seem to have that, but you're saying we should understand the regulation as saying that they would deny a claim for payment if it didn't have the required NPI. But then we're back to the question of which NPI was required. And you're saying we should understand the state laws to require the NPI of the pharmacy that dispenses as opposed to prepares because here they use the Onco 360 NPI and not the- But if PharAmerica is the dispensing pharmacy, why is specialty doing the billing? Why is specialty getting the money? And they can't have it both ways. You can't use the NPI of another pharmacy. They're all part of the same company, aren't they? They have different NPI numbers. They're not permitted to use- So they're different pharmacies, but they're a network of pharmacies. And so the question is how would a state treat this kind of partnership between two pharmacies that are under the same corporate umbrella? And we don't have states saying that this is not permitted. And we don't have states saying we would not reimburse a prescription under these circumstances. And so it's hard for me to see where the falsity of the claim for payment is or the materiality. Defendants say the reason they can do this is because they can sublicense. And if they can sublicense, then all the central fill regulations across the country are unnecessary. It can't be enforced. And this is building, I think, on Judge Menachie's question. A false claim requires known falsity, right? If you accidentally put something down on a claim that is false but you didn't realize it or that you have good faith reason to believe that you're certifying something accurately, it's not a false claim, right? So I guess building on this, you know, if no state has ever complained that, hey, this is not how our state licensing regimes work, if there is no authority out there, you can't point to any other enforcement action that any of these states have taken against Pharmerica or other companies out there saying, oh, this doesn't work. There's no regulatory action by the federal government ever stepping in and saying, hey, wait a minute, you're violating our Medicaid or Medicare regulations. Why is it knowingly false? Even if maybe you're right, that if somebody got down in the weeds and if CMS, you know, general counsel or whoever is out there said, you know what, we actually, now that we think about it, we don't like, we think this is a violation. If nobody's ever said that before and there's a dearth of regulatory action, then why wouldn't your claim fail based on the knowing or the purpose or whatever the mens rea is that attaches to the falsity? Because based on the allegations of the second amended complaint, the defendants did know that this was wrong and they could not do it. And in the Schott case within the last year, the Supreme Court said that the scienter element includes looking at what did the defendants know, what did they believe about the falsity. Here, PharAmerica created this idea of a pharmacy within a pharmacy because OncoMed, which is the prior company for Onco360, they could not bill Medicare and deliver Medicare into more than half the states because they needed a brick and mortar facility. So PharAmerica, as part of its purchase, started the pharmacy within a pharmacy plan, which was to put Onco360 pharmacies in the PharAmerica pharmacies across the country, and they had a good network, so that they would then be able to bill Medicaid in those areas. Completely unnecessary if they could just sub-license. They knew that they had to do this. But it's less complicated. I mean, I don't know. Maybe it's less complicated to do that. I mean, there are all sorts of business reasons why there may be 16 ways to skin a cat and one chooses option three. We have evidence in the second amended complaint. Why is it completely unnecessary? So there's an Onco360 inside the brick and mortar store in state one, but they don't have a pharmacist in charge, so they can't prepare it. So there's an Onco360 in another state that prepares it and sends it to the one that's in state one, right? That's the workaround. Well, the workaround – they're not using Onco360. They're using PharAmerica, which is a separate pharmacy with a separate NPI number. Onco360 lost their licenses, a bunch of licenses early on. Yes. When the people were fired. And then Ascari and the other guy. And then they picked up PharAmerica to do that function for them because they had licenses everywhere. And so then they had the PV2 system whereby there'd be a second evaluation by PharAmerica and then a dispensing by that under their license, right? And I'm not quite clear on the use of the identification because I think it wasn't always PharAmerica used their PBI. It was the other one that sometimes was used, Onco. But I guess the bottom line is so they did this, but there is a larger, big-picture question. So what? The government doesn't seem to have been bothered by it. They kept paying and they haven't sought a reimbursement. And so they did find a way to work around it, but they were working with their other company that was under the same corporate umbrella. And so I'm trying to say where is the there there in this case? Nobody was really injured. I mean, it wasn't like the people were, well, possibly up-coding is a separate question. But who was really injured by this in some way? Apart from a technical, you've come up with various technical violations based upon the regs. But apart from that, it seems to have been generally excused. I would say not. You're saying there's no harm. There's no evidence that it was addressed and excused. The only evidence is that states, which is it goes to the attorney general's office. It doesn't go to their Medicare agencies. They declined to intervene. Courts have said that cannot be a factor in the question of whether the allegations are sufficient. And a decision that, and the defendant's brief relies on sublicensing as a concept, that this court needs to adopt sublicensing as a permitted practice in order to get around the NPI problems, which were present here. And they did know because when Ascari and Fegalis were terminated, the CEO called that an operational failure. Susan Rose, who was the controller, she said they used the workaround when ARCO 360 was not licensed in states. So they knew they were trying to get around those. This could also be viewed as the distinction between tax evasion and tax avoidance, right? Tax evasion is a crime. Tax avoidance is, I suppose, not only legal but prized. And that's the question here is, was the workaround something that is a scheme that involved false claims to the government? Or was it just a very clever operational solution to a business problem that nevertheless complied with the regs? To that question, I would just say that improper use of the NPI has been held to be a false certification. That unquestionably happened here because they're using two different, unless the court is going to decide that the NPIs are interchangeable. You can just use one or the other any time. They used one on one occasion, the other on another occasion, all for their own purposes. And NPI, they say they're the dispenser. They're using their NPI. Under OMPD, ARCO 360 is doing the billing, and ARCO 360 is getting the money. Okay, I think we've kept up considerably past your time. We thank you for that. I appreciate that, Your Honors. We will hear from you again, though. Two minutes of rebuttal. Thank you, Your Honor. Don't forget about that. We'll hear from counsel for the appellate. Good morning, Your Honors. May it please the Court, Joseph Matteo from Barnes and Thornburg on behalf of the appellees. To respond to one of Mr. Mullery's points, we are not asking this panel to adopt sublicensing as a permitted and required mode of dispensing medications. The question here, and both parties agree on this, is, because this is a False Claims Act case, it's incumbent on the relator to identify a state statute, regulation, or contract that prohibits the alleged conduct. And here, there is no regulation, law, or contract that prohibits the alleged conduct. No, no, it's not a specific law. I was puzzled by that argument, puzzled by what the district court did. Because while there's no specific law prescribing this kind of, we'll use fraud for convenience, you don't have to have that. Basically, if they are violating regulations that require disclosure of certain facts, then why isn't that sufficient? That's my point, Your Honor. They have to identify a regulation that Pharmaica and Onco 360 violated through this conduct. And there is no regulation that they have cited or that we've found. How about if there are really two dispensers and they only say there's one? So the question is, So the government's left in the dark about two dispensers because of the definitions in the state law. So I think there's a question as to the licensing theory. The question there is, it's who has to be licensed? Who has to be licensed? And if you look at the states that they rely on, so it's Maryland, North Carolina, Virginia, in each of those states, and we have this in the appendix starting at page 505, we list what the law is in those states. And what those states say is that the pharmacy that has to be licensed is the one that ships, mails, and delivers. Ships, mails, and delivers into the state. So in this case, the pharmacy that is shipping, mailing, and delivering into each of these states is Pharmaica, which is the party that has the license. So if the license covers dispensing in a state where dispensing does not cover delivery, doesn't that have to be disclosed? I don't think so, Your Honor, because the question is, this is a function of federal regulation that says every dispense has to comply with state rules. So then you look at what the state rules and regulations are. And so the question is, the relator's theory is that, well, we didn't comply with that regulation because ONCO 360 wasn't licensed in those states. But you have to look at the state regulation to say, okay, who has to be licensed? And in the states they rely on, again, Maryland, North Carolina, Virginia, it says that the pharmacy that has to be licensed is the one that ships, mails, and delivers. And so in this case, based on the allegations, ONCO 360 was not doing any of those three things. ONCO 360 may have been doing some of the preparation, but the shipping, mailing, and delivering was being done by Pharmaica, which had the license. I think there were states, correct me if I'm wrong, that said that dispensing had to be licensed and not just delivery. So if you look at Maryland, Nebraska, North Carolina, Virginia, and we have a chart of this in the appendix starting at page 505, there's two questions, right? What does dispensing mean? And then what has to be licensed? And so most of these states, the majority of them say specifically ship, mail, or deliver. They don't use the word dispense. A number of the states use the word dispense, and then you look at the definition of dispense, and dispense includes the word delivery conjunctively. So there's a number of things that have to be done. And one of them is the delivery. Delivery is being done based on the allegations undisputedly filed. North Carolina doesn't apparently say that. It says dispense is preparing a packaging. It doesn't necessarily include delivery. And some states don't even define dispense. That's true, Your Honor, which is why you have to look at who has to be licensed. In North Carolina, North Carolina generals- Arkansas. Arkansas, as well. Arkansas also is a ship, mail, and deliver state. So Arkansas says anybody who routinely ships, mails, or delivers in any manner a dispense legend into Arkansas. That's Arkansas Code 17-92-401A. And North Carolina, same thing. You have to be licensed if you quote any pharmacy that, quote, ships, mails, or delivers in any manner a dispense legend into this state. Doesn't the question boil down to whether or not there was a compliance with federal regulations in relation to the- as they apply to Medicare and Medicaid- in relation to the state definitions? And isn't that a state-by-state question that has to be answered? With respect to the licensing theory, I agree that the regulation is a pass-through. You look at what the states require. And it's incumbent upon the relator to identify state regulations or laws that Pharmaerica and ONCO 360 violated. Our position is they haven't done that. And if you look at what's- the critical question is who has to be licensed. And if you look at these licensing statutes, they require the party to be licensed who is shipping, mailing, and delivering. Again, that's Pharmaerica that had the license. Now, separately, there's been a lot- there's discussion about the NPI issue. And that, I think, is a bit of a red herring. That's a regulation that says whatever provider is identified on the claim, quote, identified on the claim, their NPI number has to be included on the claim or else it will be denied. So it doesn't prescribe who- or prescribe which provider has to be there. It just says whoever is on the claim, you include that NPI number. Are you saying that wasn't- that was never violated? I mean, nobody used the NPI of a person who wasn't making- wasn't a claimant. The issue here is- and this is- there's no specific regulation that deals with this situation, right, that says you can or cannot do this. This is sort of we're in a vacuum here. We're trying our best to figure out what to do. It's the provider on the claim that has to have its NPI number there. So, you know, arguably, this is different than licensing, right? There's a licensing regime and then there's the NPI issue. Under the NPI, the question is who's the provider? Well, both pharmacies, in some sense, are providers because Onco360 is doing part of the job and then the PV2 and the delivery is all being done by Pharmerica. So then in that case, you know, Mr. Mulroney says, well, we didn't answer the question, why did we use one NPI in some situations and another NPI in another? Well, there's no regulation that tells us which NPI to use. We were doing our best to figure it out. Both pharmacies were providers in some sense, and what we did was comply with the regulation, which says if you're identifying a pharmacy on the claim, you include that NPI number. If you're saying that if the claims had PV2, it had the NPI for them, and if it said Pharmerica had Pharmerica's NPI in it, they didn't mix and match on the claim form? No, they didn't mix and match. The allegation is that under the quote-unquote workaround, Onco360 submitted the claim using its own NPI number. One claim? One claim? One claim. The allegation is that under the workaround, any claims that were submitted under that quote-unquote workaround were submitted using Onco360's number. And Onco360 is the provider allegedly listed on the claim? Yes. Or Pharmerica is? This is the allegation. Under the workaround, yes, Onco360 was listed on the claim, and its NPI number was used. So again, we're not dealing with granules here. We're not dealing with mixing and matching. No, no. The argument I understand from the other side is Onco360, well, I don't know which. I can't remember now. If it was submitted under the name listing the providers Onco360 and the NPI of 360, that's when it should have been Pharmerica, or if they used Pharmerica with Pharmerica's NPI, it really should have said Onco360 with Onco360's NPI. That's the allegation. Your opponent can clarify that, but is that your understanding of the allegation? That's my understanding of the allegation, Your Honor. What we're saying is that what the regulation actually says is that whoever the provider identified on the claim, you use that NPI number. How do you decide which provider to identify on the claim? Well, they're both providers. That's part of the issue. So you could choose one or the other. There isn't a right answer as to which provider is on the claim. I think so, Your Honor, as long as you're identifying the one that's identified on the claim. So under the workaround, Onco360 submitted it, saying this is an Onco360 claim. And under the OMPD program, that was done through the Onco360 computer, but it was done identifying Pharmerica as the pharmacy making the claim. So their argument, I understand the allegations that it can't, your opponent can correct me in a rebuttal if I'm getting it wrong. Their complaint is that Onco360 should not have been the one submitting the claims that said Pharmerica with Pharmerica's NPI. I think so, Your Honor. I don't want to speak for my opponent, but our point is that that doesn't violate the regulation, because the regulation just says whoever's on the claim, you include that NPI number. I thought that you said a minute ago that, well, my understanding was that there were Onco claims to Medicare. Medicare would then reimburse Pharmerica, and Pharmerica would take a service charge and send the money to Onco. No, Your Honor, the allegation- Do I have that wrong? I think you have it a little bit wrong. The allegation is that under the OMPD program, that the Pharmerica number was used. The claim was paid to Pharmerica, and then Pharmerica and Onco, which again, were under the same corporate- Well, that's different from what you said earlier, because the bill came from Onco360. And I think the confusion may be, Your Honor, that I was speaking before about the allegations about the workaround and- Not the OMPD. Not the OMPD. So they're slightly different. So if I can clarify, the way it's alleged is that under the workaround, Onco360 billed using its own NPI number. And they are listed as the provider on the claim? Yes. Okay. And then the OMPD, Onco is still the one who's handling the billing, like they're the people who are doing it using a computer system. But they're putting Pharmerica as the provider with Pharmerica's NPI? Yes, Your Honor. But it's Onco that's performing the actions of submitting these bills? Or is that incorrect? Is it Pharmerica who's submitting the bills? As alleged, it's Pharmerica, it's an Onco360 employee hitting send on the claim. But the claim itself identifies Pharmerica and includes Pharmerica's NPI number. That's what I- And under the regulation, that's the number you had to use. You're suggesting that there's no regulation that says if there's a claim that says Pharmerica on it as the provider with its NPI, that it has to be a Pharmerica employee who's hitting the request button? There's no regulation, and there's- Well, why wouldn't that be an implication? So if, in fact, you just told us that the entity that needs to be licensed is Pharmerica because it's doing the delivery of the prescription, why wouldn't it be the case that, okay, the licensure applies to Pharmerica, and so Pharmerica needs to be the provider on the claim because it is the one doing the delivery to the customer, and that's what the state cares about? But licensing and NPI numbers are two different concepts. So there's one regulation that says you have to be-the prescription has to be valid under state law. You look to the licensing, and there the licensing is who's delivering and mailing and shipping. Then there's a different federal regulation that says when you're doing the physical act of submitting the claim, you have to put this to the federal government. All right, so you're saying that the state might care about who's doing the delivery, and that's where the licensure requirement of the state kicks in, but the NPI requirement is created by the federal government, and the federal government doesn't necessarily or hasn't expressed a view as to whether the provider has to be the one doing the delivery or doing the preparation, and maybe both of them are providers. Exactly, Your Honor, and I would add that the state has no interest in the submission of the claim to the federal government because it's not the ones the state's not paying for. These are Medicare payments, so it's coming directly from the federal government. So there is like an intuitive position that you might say, well, the pharmacy on whose license the prescription depended might be the one that has to be considered the provider, but you're emphasizing that these requirements come from two different governments, and there's no reason why one would dictate the answer on the other. Yeah, two different regimes and two different sets of regulations, and ultimately this is a False Claims Act case, so the question is not whether or not-oh, perhaps you could do it differently. The question is did we violate a law, rule, or regulation, and then falsely claim compliance with that to the government? And has anybody from the federal government or from the state government said you have to do it a different way? No. Can I ask you to go back? Did you have anything to add? Yeah, that's fine. The first question is a completely different line of questioning that I've asked your opponent. I'm curious about your views on the overbilling scheme. The way I read the allegations, I don't know if you recall what I was saying or asking about, is that I read the allegations as saying Pharma America primarily has long-term care contracts, therefore it is a reasonable inference that everything billed through Pharma America was billed at the higher long-term patient rate, and I was asking whether that allegation or the inference fails, particularly under Rule 9, because the allegation seems to also necessarily imply that there are retail contracts that Pharma America has, and therefore if we know that Pharma America has two contracts, we cannot say that simply by virtue of billing as Pharma America, one has necessarily alleged that it has been billed at the higher of the two rates. Do you read those allegations the same way or am I missing something? I don't think your Honor is missing anything. I think the word primarily is key there because it shows that that's not the only contracts that Pharma America necessarily has. I would add to it, though, that there's also been, because they haven't alleged the terms of any of these contracts, there's no allegation that even if there was a long-term care contract that did have a long-term care rate, that it would somehow prevent Pharma America from clicking the lower retail rate if it wanted to. And is there anything in the record, because I know that we're at an early stage of the case, but is there any like appended documents to the complaint that perhaps I've missed that indicates how one submits this claim? Like you said, that there's a box to be checked saying, you know, NPI, provider name, and then contract 6A3192G that will then implicate a rate, or is that simply door of the record right now? That's not in the record, Your Honor, and I think even under notice pleading standards, they would have to allege what's in these contracts in some form to be able to allege, to create a plausible inference that there's some contractual liability here, and they just don't do it. So unless there are further questions.  Thank you, Your Honor. Why don't we hear from counsel for the appellant, and considering how long we kept you up the first time, why don't we keep it to two minutes? Okay, Your Honor. Our work here is not done today. There's more, so two minutes of rebuttal. I would disagree with the idea that licensing and NPI are not related concepts for this case. They're very related. The reason they engaged in the NPI fraud was because of the failure of licensing, which the complaint shows that they recognized. Once they had the licensing problem, they had to figure a way around it. If they could just sublicense, they wouldn't have had to do that, and we do think if looking at the defendant's briefs, it's hard to imagine the court accepting all their arguments without adopting sublicensing because for many arguments, they say it's okay. Effectively, Judge Daniels held that we can sublicense. I believe they agree that- In the practice of law, we have state-level licensing requirements too, right? So if I'm licensed in New York and I want to file a brief in New Jersey, I can't do it myself, but what we often did was we'd find a local counsel to also represent our client, and I might write the entire brief myself, but then the local counsel files it in New Jersey, and then we both bill the client because we both did work for the client, right? So this is kind of like that, right? If that's not a subversion of the state-level licensing rules in the Bar Association rules, isn't it possible that a state would regard this as a permissible workaround as well? And if we don't have a state saying that it's not permitted, then why wouldn't it just be that, well, it might be? Well, one thing, pharmacy much more regulated than the practice of law, significantly more regulated. In the example you gave, I believe you would also be admitted pro hoc in that court. Well, if my name's on the brief, but sometimes it might be that the local counsel just files the brief under his own name, right? What I would ask the court to do is go back to the essential fill regulations. They would be completely unnecessary and completely avoided if the court adopted sub-licensing, which I think you have to to get around most blatantly the NPI fraud, because they're using the NPIs interchangeably, and I believe they would agree that you cannot use the NPI of another pharmacy. I see my time is up. If there are questions from the court, I'd be happy to address them. No, I think we've peppered you both with enough questions for today. Thank you very much to both counsel. Very well argued. We appreciate it, and we will take the case under advisement.